| People v Trump |
|:---:|
| 2024 NY Slip Op 31548(U) |
| April 30, 2024 |
| Supreme Court, New York County |
| Docket Number: Index No. SMZ 71762-24 |
| Judge: Juan M. Merchan |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 59

|  | |
|---|---|
| THE PEOPLE OF THE STATE OF NEW YORK<br><br>- against –<br><br>DONALD J. TRUMP<br><br>                                Defendant | **DECISION and ORDER**<br><br>People's Motion for<br>Contempt<br><br>SMZ 71762-24 and SMZ<br>71764-24 |

JUAN M. MERCHAN, A.J.S.C.:

## BACKGROUND

Defendant is charged with 34 counts of Falsifying Business Records in the First Degree in violation of Penal Law § 175.10. The charges arise from allegations that Defendant attempted to conceal an illegal scheme to influence the 2016 presidential election. Specifically, the People claim that Defendant directed an attorney who worked for his company to pay $130,000 to an adult film actress shortly before the election to prevent her from publicizing an alleged sexual encounter with Defendant. It is further alleged that Defendant thereafter reimbursed the attorney for the payments through a series of checks and caused business records associated with the repayments to be falsified to conceal his criminal conduct. Trial on this matter commenced on April 15, 2024.

On February 22, 2024, the People filed a motion for an order restricting extrajudicial statements by Defendant. On March 26, 2024, this Court granted the People's motion and issued an Order (hereinafter the "Order"). On March 28, 2024, the People filed a pre-motion letter seeking clarification or confirmation of the March 26 Order as to whether it proscribes extrajudicial speech against family members of the Court, the District Attorney, and of all other individuals mentioned in the Order. On April 1, 2024, this Court issued an Order expanding the restrictions contained in the March 26, 2024, Order (hereinafter the "Expanded Order"). Defendant sought an emergency stay of the Expanded Order from the Appellate Division, First Department, which was denied on April 9, 2024.[1]

On April 15, 2024, the People moved by order to show cause, for this Court to find Defendant in criminal contempt for allegedly willfully violating the Expanded Order on three

---

[1] The first of the ten alleged violations occurred the following day on April 10, 2024.

separate occasions. Defendant was served with the signed order to show cause that same day in court. On April 18, 2024 the People again moved by order to show cause for this Court to find Defendant in criminal contempt for allegedly willfully violating the Expanded Order on seven additional occasions. Defendant was served with the second signed order to show cause in court that same day and he filed answering papers on or about April 19, 2024. A hearing was conducted on April 23, 2024.

The People seek a $1,000 fine for each of the alleged violations, pursuant to Judiciary Law § 751. The People also ask that this Court order the Defendant to remove the eight offending posts from Defendant's Truth Social account and the two offending posts from his campaign website. Lastly, the People request that this Court "warn the defendant that this conduct will not be tolerated and remind him that incarceration is an option should it be necessary." (Trial tr at 958-959).

The language of the Expanded Order that is pertinent to the instant motions is:

> **ORDERED,** that the Court's Order of March 26, 2024, is amended as indicated below. Defendant is directed to refrain from:
>
> a. Making or directing others to make public statements about known or reasonably foreseeable witnesses concerning their potential participation in the investigation or in this criminal proceeding;
>
> b. Making or directing others to make public statements about (1) counsel in the case other than the District Attorney, (2) members of the Court's staff and the District Attorney's staff, or (3) the family members of any counsel, staff member, the Court or the District Attorney, if those statements are made with the intent to materially interfere with, or to cause others to materially interfere with, counsel's or staff's work in this criminal case, or with the knowledge that such interference is likely to result; and
>
> c. Making or directing others to make public statements about any prospective juror or any juror in this criminal proceeding.

2

## FINDINGS OF FACT

This Court has considered the respective arguments of both parties, the exhibits introduced into evidence at the hearing and all submissions filed in support of and in opposition to the motion for contempt.

The People claim that the Defendant has violated the Expanded Order ten times. The alleged violations were introduced into evidence at the hearing as People's 1-10[2] as follows:

- Exhibit 1: A post on Truth Social on April 10, at 10:07am.

- Exhibit 2: A post on Truth Social on April 10 at 10:48am.

- Exhibit 3: A post on Truth Social on April 13 at 12:56pm.

- Exhibit 4: A post on Truth Social on April 15 at 9:12am.

- Exhibit 5: A post on Truth Social on April 15 at 10:26am.

- Exhibit 6: A post on Defendant's campaign website on April 15.

- Exhibit 7: A post on Truth Social on April 16 at 1:50pm.

- Exhibit 8: A post on Defendant's campaign website on April 16.

- Exhibit 9: A post on Truth Social on April 16 at 7:09pm.

- Exhibit 10: A post on Truth Social on April 17 at 5:46pm.

The ten posts consist of posts made by the Defendant (Exhibits 2, 3 and 10[3]), a "repost" of material previously posted by another source on another website or social media account which also contains Defendant's words (Exhibit 1), and "reposts" of material previously posted by another source on another website or social media account which do not contain commentary by the Defendant (Exhibits 4, 5, 6, 7, 8 and 9).

Defendant does not dispute that he either posted or reposted all 10 of the posts in question. Rather, he advances several defenses to support his claim that his actions do not constitute a willful violation of the Expanded Order and that he should therefore not be found to be in criminal contempt. He argues, for example, that reposting another's post does not violate the Expanded Order because the words are not his own but those of someone else; that he believed reposting was

---

[2] The People also introduced into evidence Exhibits 11-15 which were not offered as violations of the Expanded Order but rather, to advance the People's argument that Defendant's conduct was willful.

[3] Exhibit 10 is a post containing a quote which Defendant attributes to Jesse Watters. However, the words contained within the quotation marks misstate what Jesse Watters actually said. Thus, in this Court's view, this post constitutes the words of Defendant himself.

3

permissible because the People and the Court did not move to enforce the Expanded Order after the first repost; and that he did not willfully violate the Expanded Order because the posts constitute protected political speech made in response to attacks by Michael Cohen and Stormy Daniels.[4]

## CONCLUSIONS OF LAW

The Judiciary Law authorizes a court to hold a party in criminal contempt for "willful disobedience of a court's lawful mandate." People's Memorandum of Law pg 4 quoting *Town of Riverhead v. T.S. Haulets, Inc.* 68 A.D.3d 1103 [2d Dept 2009]. This is "to protect the dignity of the judicial system and to compel respect for its mandates," *Matter of McCormick*, 59 NY2d 574 [1983] and "to punish the contemnor for disobeying a court order." *Rush v. Save My Home Corp.*, 145 AD3d 930 [2d Dept 2016]. Criminal contempt requires a showing of willfulness on the part of the contemnor, *Matter of McCormick*, 59 NY2d at 574, which must be proven beyond a reasonable doubt. *Rush* 145 AD3d at 114. Thus, for a court to make a finding of criminal contempt, the moving party must establish: (1) the existence of a lawful order expressing an unequivocal mandate, and (2) a violation of the order (3) that is made with knowledge and is willful. "[A] party may not challenge a [court's] order by violating it." People's Memorandum of Law pg. 6 quoting *United States v. Cutler*, 58 F.3d 825, 832 [2d Cir 1995]. Indeed, a party may be held in contempt for violating an order later found to be unlawful. See *Schmude v. Sheahan*, 420 F.3d 645 [7th Cir 2005]. An adjudication of the contempt occurs at "a plenary hearing with due process of law including notice, written charges, assistance of counsel, compulsory process for production of evidence and an opportunity of the accused to confront witnesses against him." 22 NYCRR 604.2(b). A plenary hearing as required by law was conducted on April 23, 2024.

## DECISION

This Court rejects Defendant's arguments and finds that the People have established the elements of criminal contempt beyond a reasonable doubt as to Exhibits 2-10. This Court's Expanded Order is lawful and unambiguous. Defendant violated the Order by making social media

---

[4] At the hearing, the Court gave defense counsel numerous opportunities to cite actual instances where the Defendant's posts were made in response to perceived attacks by protected witnesses. Aside from referencing a Tweet in their responsive papers relating to Exhibit 1, counsel was unable to direct the Court's attention to any other specific "attacks" by the protected witnesses which immediately preceded Defendant's posts. Defendant offered no exhibits at the hearing.

4

posts about known witnesses pertaining to their participation in this criminal proceeding and by making public statements about jurors in this criminal proceeding.

Addressing first what has been referred to as "reposts," Exhibits 1, 4, 5, 6, 7, 8 and 9, this Court finds that a repost, whether with or without commentary by the Defendant, is in fact a statement of the Defendant. The issue of "reposting" appears to be a question of first impression. Lacking legal authority to guide its decision, this Court must, as defense counsel stated at the hearing, rely on common sense.

Both the Truth Social account and the official campaign website, exclusively represent the opinions and views of the Defendant, and neither is an open forum for others to post their own content. Defendant curated the posts at issue and then took the necessary steps to publish the posts on his Truth Social account and on his campaign website. In doing so, he endorsed the posts with one purpose in mind – to maximize viewership and to communicate his stamp of approval. Indeed, Defendant has boasted about the reach of his Truth Social platform when describing its value – "More importantly, [Truth Social] is the primary way I get the word out and, for better or worse, people want to hear what I have to say, perhaps, according to experts, more than anyone in the world … on Truth I have 7,00,000 followers …" Exhibit 11 pg 1. "[W]hen I put out a statement it is SPREAD all over the place, fast and furious. EVERYBODY SEEMS TO GET WHATEVER I HAVE TO SAY, AND QUICKLY… If it didn't work, or properly get the word out, I wouldn't use it – But it does work, and work really well[.]" Exhibit 11 pg 2. Thus, there can be no doubt whatsoever, that Defendant's intent and purpose when reposting, is to communicate to his audience that he *endorses and adopts* the posted statement as his own.

It is counterintuitive and indeed absurd, to read the Expanded Order to not proscribe statements that Defendant intentionally selected and published to maximize exposure. This is not to say that a repost will *always* be deemed a statement of the reposter, as context is directly relevant. However, here, under the unique facts and circumstances of this case, the only credible finding is that the reposts constitute statements of the Defendant.

Turning next to Defendant's post in which he purports to quote Jesse Watters. Exhibit 10. This is not a repost but rather the Defendant's own words. Mr. Watters uttered a statement which Defendant altered, placed in quotes, attributed to Mr. Watters and posted. The purpose being to call into question the legitimacy of the jury selection process in this case. This constitutes a clear violation of the Expanded Order and requires no further analysis.

5

Defendant next argues that the statements contained in the exhibits were all made in response to political attacks. While the Expanded Order does permit Defendant to respond to political attacks, merely characterizing every one of Defendant's postings as a response to a "political attack" does not make them so. Although Defendant did not produce any exhibits at the hearing, he did refer to two postings contained in his opposition papers. They include a post by Michael Cohen on April 9, 2024, wherein he comments on those who support Defendant for the presidency, and a second post by Michael Cohen on April 10, 2024, referencing Michael Avenatti's likelihood of receiving a pardon from Donald Trump. While it remains unclear whether Exhibit 1 is, in fact, a response to these two posts, the tenuous correlation is sufficient to give this Court pause as to whether the People have met their burden as to this Exhibit. However, that cannot be said as to the remaining Exhibits 2 through 9 which attack the credibility of arguably two of the more high-profile witnesses in this case. To allow such attacks upon protected witnesses with blanket assertions that they are all responses to "political attacks" would be an exception that swallowed the rule. The Expanded Order does not contain such an exception.

At the same time, this Court is keenly aware of, and protective of, Defendant's First Amendment rights, particularly given his candidacy for the office of President of the United States. It is critically important that Defendant's legitimate free speech rights not be curtailed, that he be able to fully campaign for the office which he seeks and that he be able to respond and defend himself against political attacks. For that reason, this Court exercised discretion when it crafted the Expanded Order and delayed issuing it until the eve of trial. The Order is narrowly tailored to prevent risk to the fair administration of justice and it clearly and unambiguously identifies the limited way in which Defendant's speech is restricted. It is of utmost importance to this Court that the Expanded Order not be used as a sword instead of a shield by potential witnesses. Consideration of such usage will be weighed by this Court when ruling on the willfulness of any future claims of alleged violations of the Expanded Order as well as when determining appropriate punishment, if any. In fact, the Court may very well consider the propriety of continuing the limitation on extra judicial speech as it relates to certain individuals. As this Court observed in the Expanded Order, "[i]t remains this Court's fundamental responsibility to protect the integrity of the criminal process and to control disruptive influences in the courtroom." Expanded Order pg. 3; See *Sheppard v. Maxwell*, 384 US 333 [1966]. The underlying purpose of the restriction on extrajudicial statements is to protect the integrity of these proceedings by shielding those fearful of reprisal by the Defendant so that they may take part in these proceedings without concern. However, if a protected party turns

6

that underlying purpose on its head, it becomes apparent that the protected party likely does not need to be protected by the Expanded Order.

The Court is cognizant that Defendant has made, through the various motions he has filed during the pendency of this case, numerous references to the commentary of Michael Cohen and Stormy Daniels and as indicated above, will consider such in any future filings. Nonetheless, the Court finds that it is not yet necessary to modify the terms of the Expanded Order to exclude any of the currently protected parties.

The Court finds Defendant in criminal contempt for willfully disobeying a lawful mandate of this Court in violation of Judiciary Law Section 750(3) on nine separate occasions.

## PUNISHMENT AND ORDER

Criminal contempt is punishable by a fine not exceeding $1,000, by jail not exceeding 30 days or by both in the discretion of the court, for each violation of a court order. Judiciary Law § 751(1). The Judiciary Law permits this punishment "to protect the dignity of the judicial system and to compel respect for its mandates," *Matter of McCormick*, 59 NY2d 574 [1983] and "to punish the contemnor for disobeying a court order." *Rush v. Save My Home Corp.*, 145 AD3d 930 [2d Dept 2016]. However, the Judiciary Law does not vest the Court with authority to craft an appropriate punishment when a $1,000 fine will not achieve the intended purpose. While $1,000 may suffice in most instances to protect the dignity of the judicial system, to compel respect for its mandates and to punish the offender for disobeying a court order, it unfortunately will not achieve the desired result in those instances where the contemnor can easily afford such a fine. In those circumstances, it would be preferable if the Court could impose a fine more commensurate with the wealth of the contemnor. In some cases that might be a $2,500 fine, in other cases it might be a fine of $150,000. Because this Court is not cloaked with such discretion, it must therefore consider whether in some instances, jail may be a necessary punishment.

**THEREFORE**, Defendant is hereby warned that the Court will not tolerate continued willful violations of its lawful orders and that if necessary and appropriate under the circumstances, it will impose an incarceratory punishment; and it is hereby

**ORDERED,** that Defendant pay a $1,000 fine for each of the nine violations of this Court's lawful order by the close of business on Friday, May 3, 2024; and it is further

7

**ORDERED** that Defendant remove the seven offending posts from Defendant's Truth Social account and the two offending posts from his campaign website by 2:15pm Tuesday, April 30, 2024.

The foregoing constitutes the Decision and Order of the Court.

Dated: April 30, 2024
   New York, New York

APR 3 0 2024

_____
Juan M. Merchan
Judge of the Court Claims
Acting Justice of the Supreme Court

HON. J. MERCHAN

8